UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-CV-78-HRW

JESUS ARRITOLA							PETITIONER

VS:			**MEMORANDUM OPINION AND ORDER**

BRIAN PATTON							RESPONDENT

Jesus Arritola, who is currently confined in the Federal Corrections Institution located in Ashland, Kentucky ("FCI-Ashland"), has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He has paid the $5.00 filing fee.

This matter is before the Court for screening. 28 U.S.C. § 2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

*Pro se* petitions are held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, under 28 U.S.C. § 1915(e)(2), the district court can dismiss a case at any time if it determines the action: (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

NAMED RESPONDENT

The named respondent is Brian Patton, the Warden of FCI-Ashland.

CLAIMS

The plaintiff claims that the respondent has violated his right to equal protection of the law by refusing to transfer him to a federal correctional facility located in Florida. Petitioner states that a transfer to a Florida federal facility would enable him to be closer to his family. To that end, he argues that the denial of his request to be transferred adversely impacts his right to have visitation from family members.

The petitioner claims that the respondents have misinterpreted the Bureau of Prisons ("BOP") Program Statement ("PS") 5100.07 which governs "Routine Transfers." Petitioner claims that under the BOP's "closer to home transfer" policy, he should have been awarded a transfer to his home state of Florida. He asserts that the BOP wrongly denied the request by relying on the "nearer release" policy set forth in PS 5100.08.

RELIEF REQUESTED

Plaintiff seeks an Order requiring the BOP to transfer him to a federal prison in Florida, which would put him closer to his friends and family.

ADMINISTRATIVE EXHAUSTION

The petitioner has demonstrated that he has administratively exhausted his claims by completing the four steps required by 28 C.F.R. § 542.13-15.

The petitioner made a request for a transfer with his Unit Team (BP-8) on September 18, 2006 ("Informal Resolution Attempt") [Record No. 2-5, p.2].[1] He contended that the BOP

---

[1] Petitioner initially filed a request for a transfer on July 2, 2006. Warden Patton stated in an Institutional Response dated August 21, 2006 that the Unit Team properly denied the request [Record No. 2-3, p.1]. Patton noted that under PS 5100.07, inmates who are the subject of an INS detainer could not transferred for "nearer release" purposes.

2

erroneously utilized a "nearer to" transfer request evaluation under PS 5100.08 instead of the "closer to home" transfer request evaluation under PS 5100.07 [*Id*].

The petitioner's counselor responded that because the United States Immigration and Customs Enforcement "(ICE)" had lodged a detainer against the petitioner, he was not eligible either for a "closer to home" transfer or a "nearer to home" transfer under either Program Statement [*Id*., p.3].[2] The Unit Manager commented that a "nearer release transfer" would not assist the petitioner because of the existence of the "INS Detainer." [*Id*.]

The petitioner filed a BP-9 appeal to Warden Patton [Record No. 2-5, p.4]. On November 9, 2006 Warden Brian Patton issued an "Institution Response to Administrative Remedy" [*Id*., p.6]. Warden Patton again upheld the Unit Team's decision to deny the petitioner's request to be transferred to a federal prison in Florida. Patton stated that according to PS 5100.08, *Security Designation and Custody Classification Manual*, Chapter 1, page 89, an inmate against whom (i) an Order for Deportation, (ii) an Order of Removal or (iii) an ICE detainer has been filed will not be transferred for "nearer release" purposes.

The petitioner then filed a BP-10 appeal to the BOP's Mid-Atlantic Office ("MARO") [*Id*., p.8] On January 25, 2007, K. M. White, Regional Director of the MARO, issued an institutional response denying the BP-10 appeal [Record No. 6-1, p.4]. White stated that Warden Patton had properly relied on the provisions in PS 5100.08 in denying the petitioner's request to be transferred to a federal prison in Florida.

Petitioner then filed his final administrative appeal (BP-11) to the BOP's Central Office

---

[2] ICE was previously known as the Immigration and Naturalization Service ("INS").

[Record No. 2-5, p.11]. On April 24, 2007, Harrell Watts, National Inmate Appeals Administrator, issued an institutional response denying the BP-11 appeal [Record No. 6-1, p.1]. Watts reiterated the prior conclusions reached by Warden Patton and MARO Director White. Watts noted that because ICE had lodged a detainer against the petitioner for pending deportation to Cuba, he was not eligible for transfer to a prison in Florida closer to his family.[3]

Watts further explained in his response that effective September 12, 2006, PS 5100.08 *Security Designation and Custody Classification Manual*, became the BOP's policy governing classification and transfer of inmates, replacing prior policy PS. 5100.07. Watts stated that because of the existing ICE detainer against the petitioner and the language of PS 5100.08, neither Warden Patton nor the MARO Director was required to recommend a transfer.

## PETITIONER'S LEGAL ARGUMENTS

First, the petitioner states in his Memorandum of Law that the United States does not deport people to Cuba. He argues that because of that fact, he will not be deported to Cuba on release from BOP custody. He argues that absent the possibility of deportation, he should be transferred to a prison in Florida near his family.

Second, the petitioner asserts that other inmates at FCI-Ashland, who are also Cuban nationals, are being transferred to other same level institutions. He states that these other

---

[3] Watts noted that the petitioner is a citizen of Cuba. He further stated that because ICE lodged a detainer against the petitioner, "the petitioner will be returning to a community outside, rather than inside the United States, upon his release from BOP custody."[*Id*].

inmates are "classified in the same group" and are being sent to other prisons "with the same level as the one where Mr. Arritola is being held at." [Memorandum, Record No. 2-2, p.3]. He claims that since he is being denied a transfer to a Florida prison, the BOP's actions in this regard violate his "Fourteenth Amendment" right to equal protection of the law.

Third, the petitioner reiterates that in denying his transfer request, the BOP erroneously used the newer criteria in PS. 5100.08 instead of the criteria in the prior version, PS 5100.07 .

## DISCUSSION
### 1. No Liberty Interest in Transfer

The Court must deny the instant § 2241 petition. Well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison; transfers to any particular prison; any particular security classification; or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741 (1983). Due process rights are only triggered by the deprivation of a legally cognizable property interest. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003). Prisoners generally do not have a due process liberty interest in their placement and classification while incarcerated. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S.Ct. 274 (1976).

To establish the existence of a liberty interest, a prisoner must show that he has been subjected to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life," *see Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995), or that the government's action "will inevitably affect the duration of his sentence." *Id.*, 515 U.S. at 487.

Under 18 U.S.C. § 3621, the Attorney General of the United States has delegated discretionary decisions, as to federal prisoners' placement and classification while incarcerated,

5

to the Director of the BOP. Congress has given federal prison officials full discretion to control the conditions of confinement, the place of confinement, and prisoners have no constitutional entitlement to invoke due process claims. *See DeLand v. Attorney General of the United States*, 2006 WL 3337465, *3 (N.D. Ohio, November 16, 2006) (Only Westlaw Citation currently available).[4]

As the Supreme Court stated in *Olim v. Wakinekona*, 461 U.S. at 250 "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. [And] ... an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Id*. at 250 n.12.

In sum, this petitioner does not have a liberty interest in obtaining a transfer to a facility more desirable to him, such as one in Florida.[5] *Grayson v. Rison*, 945 F.2d 1064 (9th Cir.

---

[4] Even cases which evolved before the Supreme Court's *Sandin* decision adopted the viewpoint that prisoners have no inherent constitutional right to placement in any particular prison, security classification, or housing assignment. *See Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543 (1976); and *Marchesani v. McCune*, 531 F.2d 459.

*See also Mader v. Sanders,* Ashland Civil Action No. 02-CV-00067-HRW, a case which Judge Henry R. Wilhoit of this Court decided on June 11, 2002. *Mader* involved a somewhat similar claim by a federal inmate seeking transfer to a lower-security facility. Judge Wilhoit rejected the § 2241 petition, finding that the prisoner had no due process liberty interest in his placement and classification while incarcerated. Judge Wilhoit concluded that Mader's Fifth Amendment due process rights were not violated by the BOP's' refusal to transfer him to a lower-security camp facility with other inmates who had the same custody classification. On appeal, the Sixth Circuit affirmed. *See Mader v. Sanders*, Fed. Appx. 869, 871, 2003 WL 21259676, **1 (C.A.6 (Ky.), May 29, 2003).

[5] In *Locklear v. Holland*, 194 F.3d 1313, 1999 WL 1000835 (6th Cir. (Ky.)), Locklear's Team recommended that Locklear's custody level be lowered and that he be transferred to a prison camp close to home. Locklear's presentence investigation report ("PSI"), however, contained purportedly inaccurate information alleging that Locklear had been charged with rape. Locklear strongly

1991); *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986); *Leibowitz v. United States*, 729 F.Supp. 556 (E.D. MI 1989), *aff'd without opinion*, 914 F.2d 256 (6th Cir. 1990), *cert. denied*, 499 U.S. 963 (1991); *Olim v. Wakinekona*, *supra*.

### 2. 2006 Program Statement Controls

Additionally, at the last two levels of the administrative appeal process, the BOP has correctly noted that the subsequently promulgated PS 5100.08 controls inmate requests to be transferred to prisons nearer to their families. The petitioner provided the relevant passage of PS 5100.08, ¶ 2, as an attachment to his § 2241 petition [Record No. 2-4, p.1].

This more recent version of the Program Statement was enacted on September 12, 2006, and clearly provides that inmates against whom: (i) an Order for Deportation, (ii) an Order of Removal or (iii) an ICE detainer have been filed "will not be transferred for nearer release purposes since they will be returning to the community outside, rather than inside, the United States upon release." [*Id*].

The petitioner's efforts to categorize his transfer request as one falling under another provision of a more obsolete version of the BOP's Program Statement (PS 5100.07) is simply unavailing. Even reference to the prior PS 5100.07 is not helpful to the petitioner. Warden Patton cited to PS 5100.07 in his August 21, 2006 Response (which was *prior* to implementation of PS 5100.08). He noted at that time that the existence of an ICE detainer precluded consideration of the petitioner for a transfer to a facility in Florida, nearer to his family.

---

disputed the PSI, which he claimed caused him to be denied placement in the prison camp, thus violating his due process rights. The Sixth Circuit rejected Locklear's claim, citing *Moody v. Daggett*, *supra* at 88, n.9, for the proposition that prisoners generally do not have a due process liberty interest in their placement and classification while incarcerated.

The petitioner clearly seeks a transfer to a prison in Florida, to be nearer to his family. The current, applicable Program Statement (PS 5100.08, ¶ 2) prohibits the BOP from considering a "nearer release" transfer for an inmate who is the subject of an ICE detainer. While the petitioner may be correct that he will not be *deported to Cuba*, that will not change the application of PS 5100.08 to his situation. He is still under a detainer issued by the ICE.

### 3. ICE Detainer Challenge Premature

The instant petition could be read as a challenge of the ICE detainer. Habeas corpus jurisdiction exists under the terms of 28 U.S.C. § 2241 when a petitioner asserts a claim that his *current* custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As long as the petitioner's detention is in service of a valid criminal sentence, any claim challenging the ICE detainer is premature.

The law is well settled that a prisoner must wait until he comes into the custody of the INS or ICE authorities to challenge its detention, as even an immigration detainer or other pre-release notice from immigration authorities does not confer custody to the INS. *See Kendall v. INS*, 261 F.Supp.2d 296, 300-01 (S.D. N. Y) (noting the petitioner's status, characterizing his challenge to the INS detainer as being "obviously premature," and citing cases supporting its conclusion, including *Roldan v. Racette*, 984 F.2d 85, 88 (2nd Cir. 1993); *Campillo v. Sullivan*, 853 F.2d 593, 595 (8th Cir. 1988); and *Prieto v. Gluch*, 913 F.2d 1159, 1162-64 (6th Cir. 1990)). *See also Hernandez v. Lindeman*, 2002 WL 31163074 (D. Minn. 2002) (unpublished) (same; also relying on *Campillo*, 853 F.2d at 595).

In summary, a prisoner against whom an immigration detainer is lodged "may not

challenge the detainer by way of habeas corpus until he is placed in the custody of the INS, an event which will not occur until [he] is released from his present term of confinement." *Campillo*, 853 F.2d at 595. Thus, if the instant Petitioner is still serving his criminal sentence, any interference by this Court is barred.

The Court further notes that even after the petitioner's sentence expires and he becomes detained under the authority of the ICE, he may be detained by immigration authorities for not insignificant periods of time. As to the length of this pre-hearing detention, it may be for 6 months or longer, so long as the detention is justified and reasonable. *See Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) (detention by the INS for 1½ years without a decision on removal and without any special justification for the delay, was unreasonable and his actual removal was not reasonably foreseeable; therefore, the grant of habeas relief was affirmed).

The reasonableness of the length of detention must be determined on a case-by-case basis under habeas review. *Id*. *See also Yang v. Chertoff*, 2005 WL 2177097 (E.D. Mich. 2005) (not reported) (discussing *Ly* and denying § 2241 petition of Yang, who had been in ICE custody for only three months). An immigration detainee may be held for as long as 6 months *after* the hearing if an order of removal issues from the immigration judge. For this post-removal-order period of time, the governing statute is 8 U.S.C. § 1231. On its face, the statute provides that immigration authorities "shall remove" the alien within 90 days after the alien has been ordered removed.

Given the ICE's authority to detain the petitioner after he is released from BOP custody as described above, the Court determines that PS 5100.08 operates to prevent consideration of

9

the petitioner's transfer to a prison in Florida, to be nearer to his family.

### 4. Equal Protection Challenge Insufficient

As the respondent is a federal official, the petitioner's equal protection claim would fall under the Fifth Amendment of the United States Constitution, not the Fourteenth Amendment, which applies to state actors. The petitioner's broad, sweeping claim that other Cuban nationals are being transferred to "same level" prisons lacks specificity. Even assuming for the moment that other Cuban nationals at FCI-Ashland are being transferred, the petitioner does not allege that they are being transferred *to prisons nearer to their families*. He alleges only that they are being transferred to institutions "with the same security levels the one where Mr. Arritola is being held at." [Record No. 2-2, p.3]. Petitioner's claims do not amount to a denial of equal protection of the law in violation of the Fifth Amendment.

### CONCLUSION

Accordingly, the Court being advised, it is **ORDERED** as follows:

(1) Petitioner Jesus Arritola's petition for writ of habeas corpus [Record No. 2] is **DENIED**;

(3) This action shall be **DISMISSED**, *sua sponte*, without prejudice, from the Court's docket, and judgment will be entered contemporaneously with this Memorandum, Opinion and Order.

This October 8, 2007.



Signed By:
Henry R Wilhoit Jr.
United States District Judge

10